United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY ELDER, | No. C 11-00199 SI |
| Plaintiff, | **ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION; DENYING MOTION TO DISMISS OR FOR SUMMARY JUDGMENT; DENYING MOTION FOR INTERPLEADER RELIEF** |
| v. | |
| NATIONAL CONFERENCE OF BAR EXAMINERS, STATE BAR OF CALIFORNIA, | |
| Defendants.                                                / | |

On February 11, 2011, the Court held argument on plaintiff's motion for a preliminary injunction, defendant National Conference of Bar Examiner's (NCBE) motion to dismiss or for summary judgment, and defendant State Bar of California's (State Bar) motion for interpleader relief. Having considered the arguments made, the papers submitted, and for good cause shown, the Court GRANTS plaintiff's motion to for a preliminary injunction, DENIES NCBE's motion to dismiss or for summary judgment, and DENIES the State Bar's motion for interpleader relief, but stays all proceedings in this case against the State Bar until further order of the Court.

**BACKGROUND**

Plaintiff Timothy Elder filed this action on January 13, 2011, against the National Conference of Bar Examiners (NCBE) and the State Bar of California (State Bar) for violation of the American with Disabilities Act of 1990 (ADA, 42 U.S.C. § 12101, *et seq*.) and the California Unruh Civil Rights Act (Cal. Civil Code § 51 *et seq*.). Plaintiff seeks to compel the defendants to allow him to take a portion of the California State bar exam – the Multistate Bar Exam (MBE) – using a computer equipped with

JAWS screen access software. Complaint, ¶ 1, 4. On January 4, 2011, the State Bar granted Mr. Elder's request to take two of the three parts of the bar exam using JAWS, but denied his request to take the MBE using JAWS because NCBE will not provide an electronic version of the MBE. *Id*., ¶¶ 4, 20. Elder, therefore, seeks a preliminary injunction from this Court to force defendants to allow him to use a computer equipped with JAWS to take the MBE potion of the February 2011 bar exam, which is scheduled to be administered to plaintiff on February 26 and 27, 2011. Notice of Motion at 3.

The California bar exam has three parts: six essay questions, two performance tests, and the MBE. *Id*., ¶ 2. The MBE is a two hundred item, multiple choice test that plaintiff alleges is developed and "controlled" by NCBE. *Id*., ¶¶ 2, 12. Elder asserts that both as part of his request to the State Bar and in correspondence sent directly to NCBE, NCBE has not agreed to make the MBE accessible to him through use of a computer equipped with JAWS. *Id*., ¶ 5. Elder also asserts that NCBE is the entity that determines what formats the MBE can be offered in – *i.e.*, in written booklet form, by audio CD – by the various state bar organizations who use the MBE. *Id*., ¶12.

Elder is a formerly sighted reader who is now legally blind. *Id*., ¶ 3. Elder has not used Braille from an early age and instead, since 2004, has used computer assisted software to perform nearly all academic and reading tasks. *Id*., ¶¶ 3, 16. JAWS is a "screen reader" software program that vocalizes text and allows the user to navigate through text, controlling the speed, volume, and timber of volcalization, while providing audio cues that indicate spatial and navigational elements of a text. *Id*., ¶¶ 3, 17. JAWS is Elder's primary reading method and Elder used JAWS technology to complete his assignments during law school, for all of his law school examinations, and uses JAWS in his current employment as a disability rights fellow at a law firm in Maryland. *Id*., ¶ 16. JAWS allows Elder to read with the same "automaticity" as a sighted person can read printed text, allowing him to focus on the content and not the process of reading. *Id*., ¶ 17.

Mark Stimson, an "accessibility specialist," has personally observed Elder using JAWS and states that Elder is an "advanced to expert" user of JAWS. Stimson Decl., ¶ 17. Stimson states that through using JAWS, Elder can achieve the same fluidity and control of the reading process that a sighted reader can, and that by using JAWS Elder does not need to expend mental energy on the reading process, but can focus instead on the content of the text or the goal of answering a question in a testing

2

environment. *Id*., ¶ 18; *see also* Declaration of Timothy Elder, ¶ 13.

Elder has used non-computer assisted software accommodations to take tests in the past including, most recently, using a live reader to take the MBE portion of the July 2010 Maryland bar exam. Complaint, ¶ 18. However, Elder asserts that using a live reader is "vastly inferior" to using JAWS and that using a live reader put Elder at a competitive disadvantage to his non-disabled peers on the Maryland bar exam. Elder, Decl., ¶18. Elder explains that the use of a live reader on the Maryland MBE forced him to expend significant mental energy to interact with and direct the reader, and that the live reader's mistakes and increasing frequency of breaks throughout the exam forced Elder to expend mental resources on issues other than the content of the exam and prolonged the duration of the exam. *Id*., ¶¶ 18-22.

NCBE opposes Elder's request for a preliminary injunction because it believes that allowing Elder to use a live reader is a sufficient and reasonable accommodation under the law and facts of this case, especially given Elder's successful use of a live reader for the MBE portion of the Maryland July 2010 bar. NCBE also disputes whether Elder would suffer any harm if his request for preliminary relief is denied and argues that the balance of equities tips in favor of denying Elder's request. Finally, NCBE also argues that Elder's chances of success on the merits are weak, as NCBE is not an entity covered by the ADA because the State Bar, not NCBE, "offers" the MBE under the meaning of the ADA. NCBE has filed a concurrent motion to dismiss or for summary judgment on this ground. Docket No. 28.

The State Bar does not oppose Elder's request for preliminary relief, but it also does not support NCBE. Rather, the State Bar states that it will agree to be bound by whatever ruling this Court makes, and in particular will comply with the remedy the Court may impose if it agrees that Elder is entitled to relief. *See* State Bar Motion for Interpleader Relief, Docket No. 19. As the State Bar is not taking a side in the litigation, the State Bar asserts that is should be granted "interpleader" relief and dismissed from this case, leaving Elder and NCBE to litigate this case. NCBE does not oppose the State Bar's request for interpleader relief, despite its own position that the State Bar – and not NCBE – "offers" the exam and is bound by the requirements of the ABA. Docket No. 37. Plaintiff opposes the interpleader relief, arguing that it is necessary to have both defendants in this action until the Court definitively

3

resolves the issue of whether NCBE or the State Bar, or both, are covered by the ADA's requirements with respect to the MBE.

**DISCUSSION**

**I.     NCBE's Motion to Dismiss or for Summary Judgment**

After being served with plaintiff's motion for a preliminary injunction, NCBE filed a motion to dismiss or, in the alternative, for summary judgment based on its argument that NCBE does not "offer" the MBE, and, therefore, is not covered by the ADA. Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). In addition to moving to dismiss, NCBE has also submitted extrinsic evidence in support of its alternative motion for summary judgment. *See* Fed. R. Civ. Proc. 12(d). As NCBE argues that the success of this motion is a fundamental reason why plaintiff cannot prove a likelihood of success on the merits for the preliminary relief he seeks, the Court will address this motion first.

42 U.S.C. section 12189, under Title III of the ADA, governs professional licensing examinations. Section 12189 requires entities that "offer" examinations such as the MBE to offer the exams in a "place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." The Department of Justice (DOJ) regulation implementing Section 12189 requires that, examinations "be selected and administered so as to best ensure that, when the examination is administered to an individual with a disability, . . . the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual or speaking skills" and that the examination be "administered in facilities that are accessible to individuals with disabilities [unless] alternative accessible arrangements are made." 28 C.F.R. § 36.309(b)(1)(i), (ii). Looking to the legislative history of Section 12189, Congress intended to "fill the gap that is created when licensing,

4

certification and other testing authorities are not covered by section 504 of the Rehabilitation Act or Title II of the ADA." *See* Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Reg. 35,544, 35,572 (July 26, 1991). The DOJ has advised that the regulation implementing section 12189 "applies to any private entity that offers the specified types of examinations or courses." *Id.*

NCBE argues that based on plaintiff's own admissions, the State Bar is the entity that "offers" the MBE because the State Bar "administers" the exam. Specifically, plaintiff alleges the following: "The State Bar of California offers the California Bar Examination twice each year," Complaint, ¶ 2; "The State Bar regulates the practice of law in California by establishing eligibility criteria," which includes "passage of the California Bar Exam, which the State Bar administers and scores twice each year," *id.*, ¶ 13; and the State Bar "evaluates the requests of applicants who wish to take the California Bar Examination with changes in format or auxiliary aids because of a disability." *Id.*; *see also* NCBE Reply at 1-2 (relying on these admissions in support of motion to dismiss).

However, plaintiff also alleges that NCBE "develops and controls various tests relating to the licensing of law school graduates seeking admission to the bar"; that NCBE "controls the format in which the MBE is offered in most states, including California"; and that NCBE "disseminates the MBE . . . and determines the formats in which the MBE is offered and administered"; that NCBE makes the determination with regards to whether or not the MBE is provided in electronic format with screen access software. Complaint, ¶ 12. Plaintiff alleges that while the State Bar has agreed to provide Mr. Elder with the accommodation he seeks for two parts of the bar exam, it denied the request with respect to the MBE only because NCBE "will not provide the electronic version" of the MBE. *Id.*, ¶ 20. Finally, the Complaint alleges that plaintiff has contacted NCBE directly to request the accommodation for the MBE, but NCBE has refused to provide it for him. *Id.*, ¶¶ 21-22.

Viewing the allegations in the light most favorable to plaintiff, the Court cannot say that NCBE does not "offer" the MBE within the meaning of the ADA as a matter of law. The fact that the State Bar technically administers the California bar exam does not preclude a finding that NCBE is the entity which offers the MBE or co-offers the MBE with the State Bar. NCBE attempts to downplay the relevance of its decisions and conduct, by focusing on the role of the State Bar as the entity which

5

provides the facilities for test takers and decides whether disabled test takers will be offered the accommodations it allows for the essay and practice segments of the bar, or the accommodations allowed by NCBE for the MBE. However, NCBE does not dispute that it is the entity which decides what formats – other than the paper test booklets NCBE provides for use by sighted test takers – can be offered by the State Bar to disabled test takers. NCBE does not dispute that it is the State Bar's position in this litigation that the State Bar would allow Elder to use a computer equipped with JAWS to take the MBE if NCBE would agree to provide the exam in an electronic format. Fundamentally, NCBE ignores that fact that *but for* NCBE's refusal to offer the MBE in electronic form to the State Bar, Elder would be able to take the MBE as part of the February 2011 California bar exam using a computer equipped with JAWS. Based on the undisputed facts alleged in the complaint, and especially considering the broad remedial scope of the ADA, plaintiff has adequately alleged that NCBE "offers" the MBE within the meaning of the ADA.

Turning to the evidence submitted by NCBE in moving, in the alternative, for summary judgment, the Court finds it inappropriate to rely on that material and convert this motion to one for summary judgment at this time. A cursory review of that evidence shows that the plaintiff should be allowed to take discovery and develop a full factual record on the issue of whether NCBE "offers" the MBE within the meaning of the ADA. In particular, while NCBE's declarant asserts that NCBE does not play a role in determining whether a state bar that uses the MBE will provide any particular accommodation to a test taker (*see* Moeser Decl., ¶ 3.g.), plaintiff would seek to confirm in discovery that NCBE is the entity that determines the format of the accommodations that can be offered by state bars to disabled MBE test takers, and that NCBE has allowed disabled individuals to take the MBE, as well as the Multistate Essay Exam ("MEE") and Multistate Performance Test ("MPT") offered by NCBE, in electronic formats. *See* Plaintiff's Oppo. at 6-7. Plaintiff would also confirm that NCBE requires state bars offering the MBE to follow specific protocols in administering the test, in order to protect the integrity of the test, and that state bars are required to send the MBE test booklets back to NCBE for scoring. Plaintiff's Oppo. at 10.

These facts, if true, set this situation apart from the one where an entity simply offers a product to the market. Altering an example offered by NCBE, this case is not similar to a car manufacturer

which chooses not to offer physical accommodations on its vehicles or which provides a user manual for a vehicle's operation. *See* NCBE Reply at 3, 4 . Instead, these facts tend to show that by exercising total control over the format and conditions by which the MBE will be offered to disabled as well as non-disabled test takers, as well as control over its scoring, it is NCBE which "offers" the MBE under the meaning of Section 12189.

For purposes of ruling on NCBE's motion to dismiss or in the alternative for summary judgment, the Court finds that plaintiff has adequately alleged that NCBE "offers" the MBE within the meaning of the ADA and that, at this stage of the case, is likely to prevail on the argument after the development of a full, factual record and detailed review of the legislative history of the ADA. As such, NCBE's motion to dismiss is DENIED, and the motion for summary judgment is DENIED without prejudice to its being renewed.

## II. State Bar's Motion for Interpleader Relief

The State Bar has filed a motion for interpleader relief, seeking to avoid what it claims are conflicting demands placed on it by plaintiff and its co-defendant NCBE. The State Bar complains that it is caught between plaintiff's demand that the State Bar allow him to take the MBE on a computer equipped with JAWS and NCBE's position that the State Bar's contractual and copyright obligations prevent the State Bar from providing Elder with the accommodation he seeks. Motion for Interpleader at 1. The State Bar repeatedly asserts that it will agree to abide by whatever the Court rules with respect to Elder's request for relief, but seeks to be dismissed from this Case in order to avoid the expense of litigation, risk of attorneys fees, and presumably any inference that the State Bar opposes the relief that plaintiff seeks when it has already granted plaintiff's request to use a computer equipped with JAWS for the essay and practice segments of the California bar exam.

NCBE filed a statement of non-opposition to the State Bar's motion, pursuant to Civil Local Rule 7-3(b). Docket No. 37. Plaintiff opposes the motion, arguing that until the Court determines on the merits whether NCBE is covered by Section 12189, the State Bar should remain a defendant as it is undisputably covered by the requirements of Title II of the ADA.

The Court has considered the arguments made and concerns raised by the State Bar and plaintiff

and DENIES the State Bar's motion to dismiss it as a party as a form of interpleader relief. The Court is cognizant of the State Bar's awkward position between plaintiff and NCBE, as well as its concerns over "defending" the case where it does not oppose the ultimate relief plaintiff seeks – being able to take the MBE with a computer equipped with JAWS – but finds that the State Bar should remain a party until the Court rules on a motion for summary judgment, brought on a full record, to determine NCBE's argument that it does not "offer" the MBE within the meaning of Section 12189. Instead of dismissing the State Bar from this case, the Court will STAY the case with respect to the State Bar, obviating the need for the State Bar to proceed with case management and discovery obligations, as well as any additional motions practice, until further order of the Court. If the Court finds that it requires the participation of the State Bar in any future proceedings, the Court will *sua sponte* lift the stay to allow the case to proceed in an orderly and efficient manner.

### III. Plaintiff's Motion for Preliminary Injunction

"A plaintiff seeking a preliminary injunction must show that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." *Enyart v. National Conference of Bar Examiners, Inc.*, 2011 U.S. App. LEXIS 151, *14 (9th Cir. January 4, 2011). Applying each of these factors, and in light of the Ninth Circuit's very recent ruling in *Enyart v. NCBE,* which settled the specific legal standard this Court must apply in determining Elder's likelihood of success, the Court finds that Elder is entitled to the preliminary relief he seeks.

#### A. Likelihood of Success

Elder's likelihood of success on the merits is largely determined by the Ninth Circuit's recent decision in *Enyart v. NCBE*. In that case, the Ninth Circuit upheld a preliminary injunction issued by the district court compelling NCBE to allow a blind applicant to use a computer equipped with JAWS

and another assistive software program on the February and July 2010 California bar MBEs.[1] *Enyart*, 2010 U.S. App. Lexis at * 5-10. The Ninth Circuit affirmed the district court's orders, finding that use of a computer equipped with assistive software was necessary to "best ensure" Enyart's chances of success on the bar exam.

In reviewing the district court's injunctions, the Ninth Circuit made a particularly significant holding in determining the level of accommodations that must be provided to applicants for professional licensing examinations like the MBE. The Court noted that 42 U.S.C. section 12189 requires entities that offer examinations to offer the exams in a "'place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.'" *Id*., at *15 (quoting 42 U.S.C. § 12189). The Court found that the meaning of "accessible" in the statute was ambiguous in the context of licensing examinations, requiring the Court to defer to the Department of Justice's regulation interpreting section 12189. That regulation requires entities offering examinations to "assure that . . . [t]he examination is selected and administered so as to *best ensure* that, when the examination is administered to an individual with a disability . . . the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual or speaking skills. . . ." 28 C.F.R. § 36.309(b)(1) (emphasis added); *see also Enyart*, 2010 U.S. App. LEXIS at *16-18.

The Court rejected the argument that section 12189 requires only "reasonable accommodations," as that phrase is used in other parts of the ADA. *Id*., *20-22. Instead, the Court adopted the higher "best ensures" standard that the DOJ specifically promulgated for licensing examinations. That standard, the Court succinctly explained, means that accommodations must be offered that "best ensure" the exam results accurately reflect applicants' aptitudes rather than disabilities. *Id*., *18-22.

In *Enyart*, the Court held that, "given the specific nature of her impairment and the specific nature of these exams," NCBE was required to offer Enyart her requested accommodations, including a computer with JAWS. *Id*., *22-25. In so, holding, the Court found that while an applicant's prior experiences with certain accommodations – such as Enyart's past use of live readers – were relevant

---

[1] The district court also ordered NCBE to allow Enyart to take the March 2010 and August 2010 Multistate Professional Responsibility Exams (MPRE) using her requested accommodation.

9

to whether an offer of similar accommodations would make an exam "accessible" to a person with disabilities, "they are not conclusive, especially as to whether those accommodations best ensure that the exams are accessible." *Id.*, *23. The Court also noted, that "assistive technology is not frozen in time: as technology advances, testing accommodations should advance as well." *Id*.

Here, much of NCBE's argument as to Elder's chance of success on the merits ignores the fact that the Ninth Circuit unequivocally adopted the "best ensure" standard in *Enyart*, and therefore much of the case law relied on by NCBE is inapposite. *See* NCBE Oppo. at 10 (discussing cases applying the "reasonable accommodation" standard to employment and public access and services cases). NCBE's reliance on DOJ regulations which contain a non-exclusive list of appropriate auxiliary aids for individuals with visual impairments and a DOJ settlement with a testing organization approving certain approved accommodations, in order to argue that the limited number of accommodations NCBE allows for Elder and other MBE test takers is reasonable under the ADA, is likewise misplaced. *See* NCBE Oppo. at 11-12. NCBE made these exact arguments in the *Enyart* case, and they were rejected by the Ninth Circuit. *See Enyart* at *25 ("To hold that, as a matter of law, an entity fulfills its obligation to administer an exam in an accessible manner so long as it offers some or all of the auxiliary aids enumerated in the statute or regulation would be inconsistent with Congressional intent."); *id.*, at *26 ("There is no reason that this decade-old settlement agreement should define the maximum NCBE can be required to do in order to meet its obligation to make the MBE and MPRE accessible to Enyart."). Nor was NCBE's argument that a resolution of the National Federation of the Blind (NFB) from 2000 that called upon the American Council on Education to ensure that it administered the GED exam in four standard media routinely used by blind persons, including large print, Braille, tape, and live reader, persuasive to determine whether Enyart was provided necessary accommodations. "The fact that the NFB ten years ago urged the American Council on Education to allow test-takers to choose among large print, Braille, tape, and live reader accommodations does not lead to the conclusion that, as a matter of law, the accommodations offered by NCBE made the MBE and MPRE accessible to Enyart." *Id.*, * 26-27.

As in *Enyart*, the fact that DOJ or NFB recommended or required certain types of accommodations over a decade ago, does not mean that a live reader is a sufficient accommodation for

10

Elder to take the California MBE in 2011. More fundamentally, there is no evidence or argument that the "standard" accommodations would "best ensure" that Elder's *ability* is accurately reflected by his performance on the MBE, in light of Elder's particular history of visual impairment, the specific experiences Elder had with various accommodations, and in light of technological advances in the types of accommodations available to disabled test takers. *Cf. Enyart*, at *23 ("assistive technology is not frozen in time: as technology advances, testing accommodations should advance as well.").

For this reason, NCBE's reliance on Elder's prior proceedings before the United States District Court for the District of Maryland is also misplaced. While Elder admittedly sought to use a computer equipped with JAWS for the July 2010 Maryland bar MBE, and that request was denied by Judge Motz, in reaching his decision Judge Motz interpreted "accessible" under section 12189 to mean only "reasonably accessible," and not the higher "best ensures" standard adopted by the Ninth Circuit in *Enyart*. *See* Declaration of Daniel F. Goldstein, Ex. H at 70.

Turning to the specific facts of this case – namely what is necessary to make the MBE accessible to Elder "given [his] specific impairment and the specific nature of" the MBE portion as well as the California bar exam in general, *Enyart*, at * 24 – the Court finds that use of a computer equipped with JAWS would best ensure that Elder's performance on the California bar exam accurately reflects his abilities rather than his visual impairment. NCBE argues that Elder's use of a live reader for his July 2010 Maryland bar MBE, and his very successful score on that portion of the test, prove that using a live reader for the California MBE makes that exam "accessible" to Elder. *See* Oppo. at 9 (asserting that Elder's scaled score on the July 2011 Maryland MBE was 161, placing him in the 86.5th percentile of all MBE-takes nationwide for the July 2010 administration); *see also* Declaration of Erica Moeser, ¶ 7.c.ii. The Court rejects NCBE's argument for the following reasons. While the successful use of past accommodations is certainly relevant, they are "not conclusive, especially as to whether those accommodations best ensure that the exams are accessible." *Enyart*, 2010 U.S. App. LEXIS 151, *23. Moreover, as phrased by the Ninth Circuit, the question is "not what might or might not accommodate other people with vision impairments, but what is necessary" to make the specific exam at issue accessible to the specific person at issue. *Id*., *24.

Here Elder has submitted evidence that JAWS is his primary method of reading, that using a live

11

reader is "vastly inferior" to using JAWS, and that using a live reader put Elder at a competitive disadvantage to his non-disabled peers on the Maryland bar exam. Elder Decl., ¶¶12, 18; *see also* Declaration of Fredric K. Schroeder, ¶ 17 (a disabled person's primary method of reading is "critical to determining what accommodation is appropriate in a given situation."). Elder explains that the use of a live reader on the Maryland MBE forced him to expend significant mental energy to interact with and direct the reader, and that the live reader's mistakes and increasing frequency of breaks throughout the exam forced Elder to expend mental resources on issues other than the content of the exam and prolonged the duration of the exam. Elder Decl., ¶¶ 18-22; *see also* Elder Reply Decl., ¶¶ 5, 7, 12, 13 (discussing time-consuming interruptions, interpersonal difficulties and inability to secure accurate punctuation and other textual information from live readers). Elder has also shown that he does not have a high proficiency in using Braille and has never used an audio CD to take an examination; two of the other accommodations that NCBE allows visually impaired readers to use for the MBE. Elder Decl., ¶¶ 13, 14.[2]

Elder has also submitted evidence – through his own declaration and that of Mark Stimson – that he is an advanced to expert user of JAWS, whose high facility with JAWS allows him to absorb text similarly to a sighted reader. Stimson Decl., ¶ 17. The evidence shows that through using JAWS, Elder can achieve the same fluidity and control of the reading process as that of a sighted reader, and that by using JAWS, Elder does not need to expend mental energy on the reading process but can focus instead on the content of the text or the goal of answering a question in a testing environment. *Id.*, ¶ 18; *see also* Elder Decl., ¶ 13. Elder also used JAWS to complete his assignments during law school, for all of his law school examinations, and uses JAWS in his current employment as a disability rights fellow at a law firm in Maryland. Stimson Decl., ¶ 16.

Turning to the specifics of the exam at issue, the Court initially notes that the California bar is

---

[2] NCBE argues that Elder has failed to show use of an audio CD would not be an adequate accommodation. Oppo. at 18, n.9. However, the Court finds Elder's lack of prior use of an audio CD, and related unfamiliarity with an audio CD player, demonstrates that use of an audio CD for Elder would not be a sufficient accommodation. Moreover, as discussed above, the audio CD does not have the full functionality that JAWS does, including providing audio cues that indicate spatial and navigational elements of a text as well as the ability to focus on single sentences. *See* Elder Decl., ¶¶ 3, 17; Elder Reply Decl., ¶ 16; *cf.* Moeser Decl., ¶ 5.a.iv (noting that audio CD tracks cover each question, not subparts or components of questions).

fundamentally different from the Maryland bar. The California bar exam is normally three days long, whereas the Maryland bar exam is only two days long. For test takers granted double-time, like Elder, the California bar exam is six days long, as opposed to four days for Maryland. *See* Elder Decl., ¶ 21 (discussing conduct of reader on second day of MBE exam); and Ex. A (requesting double time). Given length of the California bar exam – of which two days will be the MBE portion – the Court finds that additional expenditures in terms of mental energy or additional time necessitated by use of a live reader, would likely have a significant impact on Elder's performance not only on the MBE portion, but also on the bar exam as a whole. Elder also submits evidence that the MBE counts as 35% percent of an applicant's total score on California bar exam. *See* Goldstein Decl., Ex. B at 3. Therefore any reduction in score on the MBE that would likely result from Elder's use of live reader, could very well cause Elder to fail the California bar exam. Finally, the Court notes that there are starkly different passage rates on the Maryland bar and California bar exams. *See* Goldstein Decl., Ex. D (noting an overall 37.1% general passage rate on the February 2010 California bar exam); Ex. F (noting an overall 54.8% general passage rate on the July 2010 California bar exam); ¶ 8 & Ex. F (noting a 75.4% passage rate for the July 2010 Maryland bar exam). The significant differences between the Maryland and California bar exams, undermine NCBE's argument that simply because Elder successfully used a live reader on the Maryland MBE for the July 2010 Maryland bar exam, use of a live reader for the February 2011 MBE is a sufficient accommodation.

In sum, given the history of Elder's particular impairment, his experience with various accommodations – including his ability to achieve a level of automaticity in "reading" with JAWS – and given the particular characteristics of the California bar, the Court finds that use of a live reader would not make the California bar accessible to Elder. Instead, Elder has demonstrated that a computer equipped with JAWS would best ensure that his performance on the MBE component, as well as on the bar exam as a whole, would accurately reflect his abilities instead of his visual impairment and is a necessary accommodation.

NCBE's other main argument on this prong of the preliminary injunction test is that Elder cannot demonstrate a likelihood of success on the merits because NCBE does not "offer" the MBE within the meaning of section 12189 and, therefore, is not the entity covered by the ADA's testing requirements

13

1 or DOJ regulation. However, as discussed above, the Court finds that at this stage of the litigation Elder
2 has adequately alleged and made a preliminary showing that NCBE does "offer" the MBE within the
3 meaning of the ADA.

4 For the foregoing reasons, the Court finds that Elder has shown a likelihood of success on the
5 merits that under the ADA, NCBE must provide and facilitate the accommodation for the MBE
6 requested by Elder.[3]

### B. Irreparable Harm

Elder claims that he will suffer irreparable harm if his motion for preliminary relief is denied. Elder notes that if he does not receive his accommodation he faces two choices: take the exam under discriminatory conditions and risk failure and delay in his ability to practice law in California, or postpone taking the exam until after a determination on the merits in this case, and likewise suffer a delay in his ability to practice law in California. The Court finds that under either scenario, plaintiff is likely to suffer irreparable harm. Elder has demonstrated, as noted above, that his ability to pass the California bar exam would be significantly compromised if he were forced to use a live reader on the MBE, as part of the lengthy and difficult California bar exam. *See also* Elder Decl., ¶¶ 27-29. The Court has also found that the accommodations proposed by NCBE do not comply with the ADA, and that other technology – a computer equipped with JAWS – is readily available and will best ensure Elder's success on the MBE and the bar exam as a whole. Taking the exam without a computer equipped with JAWS, therefore, would force Elder to take the exam under discriminatory circumstances – a result that, in and of itself would cause plaintiff irreparable harm. *See, e.g., Chalk v. United States Dist. Court Cent. Dist.*, 840 F.2d 701 (9th Cir. 1988) (non-monetary deprivation of right to be free of

---

[3] NCBE objects to much of the evidence provided by plaintiff in support of his motion for a preliminary injunction. *See* Oppo. at 25. The Court overrules NCBE's objections to portions of Elder's declaration in support of a preliminary injunction. The Court likewise overrules NCBE's objections to portions of the declaration of Mark Stimson. The Court need not reach NCBE's objections to the remaining declarations submitted by plaintiff, as the Court does not rely on the portions objected to in ruling on the motions currently before the Court. Finally, the Court overrules NCBE's objections to Elder's declaration submitted in support of his Reply [Docket No. 46], as the information provided by Elder is either in response to arguments made in NCBE's Opposition or simply reiterative of information provided in his initial declaration.

14

1  discrimination can constitute irreparable harm). Moreover, a delay in Elder's ability to practice law in
2  California will also likely result in irreparable harm. Whether from failure to pass the February 2011
3  bar or from a delay until this case is determined on its merits, Elder would be prevented from practicing
4  law in California, a result that the Ninth Circuit found constituted irreparable harm in *Enyart*. *Enyart*,
5  2011 U.S. App. LEXIS 151, *30-32; *see also* Elder Decl., ¶¶ 29-30. NCBE argues that this case is
6  distinguishable from *Enyart* because Elder is a licensed attorney, practicing in Maryland. However,
7  Elder has explained that his one year fellowship in Maryland ends in August 2011 and he has no job
8  prospects there. Elder Decl., ¶ 6; Elder Reply Decl., ¶ 18. Elder has also explained his intention was
9  and remains to return to California – where he attended law school – in order to be with his extended
10 family. Elder Reply Decl., ¶ 18. Moreover, Elder has invested substantial time and money in preparing
11 for the February 2011 California bar exam, including setting aside most of the month to study and
12 subscribing to a bar preparation course. *Id*., ¶ 32. Given the allegations and evidence in this case, the
13 Court finds that Elder has shown that he is likely to suffer irreparable harm if his request for injunctive
14 relief is denied.[4]

### C. Balance of Equities

17 The Court also finds that the balance of equities tips in Elder's favor. As noted above, Elder will
18 likely suffer irreparable harm if his request for relief is denied and he is not provided the accommodation
19 he seeks. On its side of the equities scale, NCBE complains of the potential harm it would suffer in
20 terms of its ability to protect the integrity of the exam questions used on the MBE and in terms of the
21 expense and personnel required by NCBE to facilitate producing an electronic version of the MBE for
22 Elder's use on either a computer supplied by Elder or by NCBE. *See* Oppo. at 22-23. As an initial
23 matter, the Ninth Circuit in *Enyart* affirmed the district court's rejection of NCBE's expense argument,
24 noting that Enyart had agreed to post a $5,000 bond to cover NCBE's costs in the event NCBE prevails
25 on the merits. 2011 U.S. App. LEXIS 151, *34. Here, as in *Enyart*, Elder has agreed to post $5,000

---

[4] NCBE argues that Elder's harm is not "immediate" because he waited until January 13, 2011 to file this lawsuit and move for a preliminary injunction. Oppo. at 21. However, as plaintiff notes, he filed this lawsuit nine days after receiving notice that the State Bar denied his accommodation to take the MBE with a computer equipped with JAWS.

15

1 injunction bond to cover NCBE's expenses if NCBE prevails at trial.[5] With respect to NCBE's security
2 concerns, the Court finds that those concerns could be minimized, for example by NCBE providing a
3 computer equipped with JAWS for Elder's use on the exam. *See Enyart*, \*34 (noting that NCBE's
4 securities concerns are minimized by requiring Enyart to use NCBE's laptop which would not have
5 wireless access). The other concerns expressed by NCBE – that laptops are an attractive target for theft
6 and that, assuming a secure laptop was provided by NCBE to the State Bar for Elder's use, the laptop
7 would be out of NCBE's control for a significant amount of time – are also not persuasive. As with
8 paper test booklets, NCBE can develop protocols that require the State Bar to handle any laptop
9 provided as an accommodation on the MBE in a certain manner and with specific precautions in order
10 to reduce or eliminate any security risk. *Cf.* Goldstein Decl., Ex. A (MBE Supervisors Manual outlining
11 specific protocols to be followed in order to protect security of MBE test booklets and questions).
12 Finally, NCBE has not demonstrated that its security concerns with respect to use of a laptop provided
13 by NCBE are materially different from the security risks that are present when thousands of paper
14 booklets, containing the same sensitive questions, are provided to the State Bar and distributed to take
15 takers.

16 On the current record, the Court finds that the potential harm to NCBE is minimal. In light of
17 the likely irreparable harm to Elder, the balance of equities tips in his favor.

19 **D. Public Interest**

20 The Ninth Circuit in *Enyart* affirmed the district court's holding that, "'the public clearly has an
21 interest in the enforcement of its statutes,'" including the ADA and specifically section 12189. *Enyart*,
22 \*34. The Ninth Circuit explained that the public's interest in compliance with the ADA was not
23 outweighed by NCBE's concerns regarding integrity of the MBE licensing examination, where NCBE
24 did not argue that allowing Enyart to take the MBE and MPRE using a computer with assistive software
25 would result in unreliable or unfair exam results. *Id*., \*34-35. As a result, the Court affirmed the district

---

[5] Plaintiff also submits evidence that NCBE has stated that if it is ordered by a court to provide a copy of the MBE in electronic form as an accommodation, NCBE will pass along the cost associated with the accommodation, a "per applicant" charge of $5,000, to the jurisdiction providing the bar exam. Goldstein Decl., Ex. G.

16

court's conclusion that issuing an injunction to provide Enyart with her requested accommodations "served the public interest in enforcement of the ADA and in elimination of discrimination on the basis of disability." *Id*., *35. NCBE does not argue that the accommodation sought by Elder would result in unreliable or unfair exam results and, in light of *Enyart*, the Court finds that issuing an injunction in this case would likewise serve the public interest.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiff's motion for a preliminary injunction; DENIES NCBE's motion to dismiss or motion for summary judgment; and DENIES the State Bar's motion for interpleader relief.

Plaintiff shall immediately post a $5,000 injunction bond to ensure that NCBE's costs are covered in case Elder does not succeed on the merits.

Elder and NCBE shall agree on the security protocols necessary to provide Elder a computer equipped with JAWS for the 2011 California MBE. If the parties cannot agree to follow the protocols agreed to in Judge Breyer's case, *Enyart v. NCBE*, Case No. 3:09-cv-05191, or otherwise have concerns with respect to implementing this Court's order, the parties must contact the Court immediately.

**IT IS SO ORDERED.**

Dated: February 16, 2011

SUSAN ILLSTON
United States District Judge